UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PRINCE M. ASIAM,<br>*Plaintiff*,<br><br>v.<br><br>LONIS, et al.,<br>*Defendants*. | No. 3:25-cv-00494 (VAB) |

**INITIAL REVIEW ORDER**

Prince M. Asiam, a sentenced inmate housed at Osborn Correctional Institution ("Osborn"),[1] has filed a *pro se* Complaint under 42 U.S.C. § 1983. *See* Compl., ECF No. 1. He sues four Defendants for civil rights violations related to an alleged deliberate indifference to his serious medical needs. *Id.* ¶¶ 4-8.

Mr. Asiam names as Defendants, Advance Practice Registered Nurse ("APRN") Lonis, Chief Operating Officer of Health Services ("COO") Robert Richeson, Acting Warden Robert Martin; and Department Of Correction ("DOC") Commissioner Angel Quiros. *Id.* ¶¶ 4-7. He sues them in both their individual and official capacities. *Id.*

For the following reasons, Mr. Asiam's Eighth Amendment deliberate indifference and related negligence claims may proceed against APRN Lonis in her individual and official capacity. Mr. Asiam's claims against COO Richeson, Acting Warden Martin, and Commissioner Quiros in their individual and official capacities are dismissed.

---

[1] *See* DOC, Inmate Locator, available at https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=409846 (last accessed August 7, 2025).

1

I.        **FACTUAL AND PROCEDURAL BACKGROUND**

Mr. Asiam alleges that, as of the time of filing this Complaint in March 2025, he had been waiting for a medical appointment for "nearly five months." *Id.* ¶ 8. He alleges his need for a medical appointment stems from an August 21, 2024, car accident during which he suffered injuries while being transported by a DOC transport vehicle. *Id.* ¶¶ 8-9. Mr. Asiam allegedly suffered a loss of consciousness in the crash, and injuries to his lower back, shoulder, and neck. *Id.* ¶¶ 9-10. Mr. Asiam allegedly received immediate treatment at the hospital, but Osborn officials allegedly denied him follow-up treatment once he returned to the facility. *Id.* ¶ 8.

Mr. Asiam alleges that his back, shoulder, and neck pain persisted upon his return to Osborn. *Id.* ¶ 10. He alleges he has submitted "numerous written request[s] to [Osborn's] medical department, seeking follow-up care, rehabilitation, and physical therapy." *Id.* Without receiving that treatment, Mr. Asiam alleges he has been in "constant, unbearable pain." *Id.*

Mr. Asiam alleges that APRN Lonis is aware of Mr. Asiam's requests and his resulting pain. *Id.* ¶ 11.

Mr. Asiam alleges that COO Richeson should be "held accountable" for Mr. Asiam's lack of treatment because he is the "individual responsible for overseeing inmate healthcare" and he "failed to ensure any follow-up care or monitoring of [Mr. Asiam's] injuries." *Id.* ¶¶ 12-13; *id.* ¶¶ 13-14 (alleging generally that Defendant Richeson failed to address or respond to Mr. Asiam's needs, despite bearing "direct responsibility").

Mr. Asiam alleges that Acting Warden Martin had a "clear obligation to ensure the safety and well-being of individuals in DOC custody," but "failed to implement or enforce appropriate policies to provide adequate medical care" to Mr. Asiam. *Id.* ¶ 15.

Mr. Asiam alleges that Commissioner Quiros similarly was "responsible for establishing and overseeing policies that ensure incarcerated individuals receive adequate medical care," but "fail[ed] to address systematic deficiencies" within the DOC medical system. *Id.* ¶ 16. As the "primary policy maker," Mr. Asiam alleges that Commissioner Quiros "bears ultimate responsibility" for Mr. Asiam's allegedly inadequate treatment. *Id.*

He seeks compensatory damages, a declaratory judgment, and injunctive relief. *Id.* at 10-11.

## II.   STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Id*. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555-57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

### III. DISCUSSION

The Court will review Mr. Asiam's Eighth Amendment deliberate indifference to serious medical needs claims and his related state law negligence claims. *See Bibiloni v. Doe*, No. 24-CV-1583 (VDO), 2024 WL 4744662, at *3 (D. Conn. Nov. 12, 2024) (analyzing Eighth

Amendment deliberate indifference and state law negligence claims as rising and falling together).

### A. Supervisory Liability

First, a plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (noting "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983") (internal citation and quotation marks omitted). This is true with respect to supervisory officials as well. *See Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability").

Here, Mr. Asiam has pled no facts to support the personal involvement of Richeson, Martin, or Quiros. Mr. Asiam does not allege that these Defendants had specific knowledge of or involvement in his medical treatment, and instead he alleges that, by virtue of their supervisory positions, they should be held to account for the failings that he alleges occurred. But the Second Circuit's decision in *Tangreti* precludes seeking this type of relief. *See id.*; *see also Anderson v. Univ. of Connecticut Health (CMHC)*, No. 3:20CV1258 (MPS), 2020 WL 6364765, at *5 (D. Conn. Oct. 29, 2020) (dismissing claim against COO Richeson because the plaintiff failed to allege "any factual allegations describing conduct by these defendants in the body of the complaint"); *Gilhooly v. Quiros*, No. 3:21-CV-140 (SVN), 2022 WL 252410, at *7 (D. Conn. Jan. 27, 2022) (dismissing claim against Warden Martin because the plaintiff "allege[d] no personal involvement by the [] warden in the alleged disregard and improper processing of his grievances"); *Shabazz v. Brunelle*, No. 3:25-CV-00060 (VAB), 2025 WL 1726323, at *10 (D.

Conn. June 20, 2025) ("Commissioner Quiros' high position of authority within the DOC is, itself, insufficient to establish personal involvement.").

Accordingly, Mr. Asiam's claims against Richeson, Martin, and Quiros in their individual capacities will be dismissed under 28 U.S.C. § 1915A(b)(1).

### B. The Eighth Amendment Deliberate Indifference Claim

To state a cognizable Eighth Amendment claim for deliberate indifference to a prisoner's medical needs, the prisoner must show that "(1) objectively, the alleged deprivation of medical care was 'sufficiently serious,' and (2) subjectively, that a defendant acted or failed to act 'while actually aware of a substantial risk that serious inmate harm will result.'" *Washington v. Artus*, 708 F. App'x 705, 708 (2d Cir. 2017) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006)). The prisoner must allege facts to suggest that a defendant acted not merely carelessly or negligently, but with a subjectively reckless state of mind akin to criminal recklessness. *See, e.g.*, *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). "Officials need only be aware of the risk of harm, not intend harm. And awareness may be proven from the very fact that the risk was obvious." *Id.*

The prison official must have intended to deny or unreasonably delay access to necessary medical care, or to wantonly inflict unnecessary pain. *Estelle v. Gamble*, 429 U.S. 97, 104-106 (1976). That said, "not every lapse in prison medical care will rise to the level of a constitutional violation; rather, the conduct complained of must shock the conscience or constitute a barbarous act." *Daniels v. Murphy*, No. 3:11-cv-286 (SRU), 2014 WL 3547235, at *8 (D. Conn. July 17, 2014) (internal citation, quotation marks, and brackets omitted).

Regarding the objective requirement, several factors are highly relevant to the inquiry of whether a condition is serious for purposes of the Eighth Amendment, including "whether 'a

reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" *Salahuddin,* 467 F.3d at 280 (quoting *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998)).

Here, Mr. Asiam alleges that Defendants denied him adequate follow-up medical treatment after his involvement in the DOC transport vehicle accident. His injuries included back, neck, and shoulder pain, and were, at least in the first instance, significant enough to warrant ambulatory care. Compl. ¶ 12.

The Court will assume, for initial review purposes only, that Mr. Asiam's allegations of severe neck, back, and shoulder pain are sufficient to meet the Eighth Amendment objective standard. *See, e.g.*, *Abreu v. Farley*, No. 6:11CV06251(EAW), 2019 WL 1230778, at *10 (W.D.N.Y. Mar. 15, 2019) ("[C]ourts have held that severe back pain, especially if lasting an extended period of time, can amount to a serious medical need under the Eighth Amendment.") (internal citation and quotation marks omitted); *Stevenson v. Quiros*, No. 3:21CV00234(SALM), 2022 WL 168799, at *8 (D. Conn. Jan. 19, 2022) (assuming, on initial review, that allegations of the plaintiff's "chronic and severe pain in his back, neck, and shoulders and numbness in his back and legs that interfered with his ability to sleep, stand, and sit for extended periods" satisfied the objective standard).

Regarding whether Mr. Asiam's claim satisfies the subjective standard, the relevant inquiry is whether "the prison official knew of and disregarded the [prisoner's] serious medical needs." *Chance*, 143 F.3d at 702. "So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment

7

violation." *Id*. at 703. Here, Mr. Asiam alleges that he has received no follow up care, and so he does not, at least at this time, appear to dispute Defendants' medical judgment.

With respect to Defendants Richeson, Martin, and Quiros, Mr. Asiam alleges no facts to suggest that these Defendants had knowledge of his concerns about his lack of follow up care. Instead, he again focuses on their positions of supervisory authority. But he must point to facts to support that a prison official was "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle,* 429 U.S. at 104. And he points to no such facts here as to those Defendants, and he has therefore failed to satisfy the subjective standard as to Richeson, Martin, and Quiros.

Mr. Asiam does, however, allege facts to support that APRN Lonis had knowledge of the risk to Mr. Asiam. Mr. Asiam alleges that Defendant Lonis was "fully aware" of Mr. Asiam's serious medical needs, and yet she failed to act on that knowledge. Compl. ¶ 11. Although these allegations border on the conclusory, the claim will proceed for further development. *See Wesolowski v. Kamas*, 409 Fed. App'x. 476, 477 (2d Cir. 2011) ("A prison official acts with deliberate indifference when he '*knows of and disregards* an excessive risk to inmate health or safety.'" (quoting *Farmer,* 511 U.S. at 837)) (emphasis added).

Accordingly, the claim against APRN Louis may proceed, but the claims against COO Richeson, Acting Warden Martin, and Commissioner Quiros will be dismissed.

C. **Non-Monetary Relief**

"A] plaintiff may not obtain injunctive relief against a state official in [his] individual capacity." *Taylor v. Dorantes*, No. 3:19CV01350(JCH), 2019 WL 13293562, at *4 (D. Conn. Oct. 16, 2019). A plaintiff may proceed for injunctive or declaratory relief against defendants in their official capacities, only if the plaintiff alleges an ongoing constitutional violation. *See Va.*

*Off. for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254-55 (2011) ("[W]e held that '[i]n determining whether the doctrine of *Ex parte Young*[, 209 U.S. 123 (1908),] avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" (quoting *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002))). And, "[i]n the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846-47 (1994)).

Accordingly, consistent with the analysis above, there is no basis for any cliams of injunctive or any other form of non-monetary relief against COO Richeson, Acting Warden Martin, and Commissioner Quiros, but any claim for injunctive relief against APRN Louis will remain for now.

**IV.   CONCLUSION**

For the reasons stated above, Mr. Asiam's Eighth Amendment deliberate indifference and related negligence claims against APRN in both her individual and official capacity will remain. His Eighth Amendment deliberate indifference and related negligence claims against COO Richeson, Acting Warden Martin, and Commissioner Quiros in their individual or official capacities are dismissed.

**ORDERS**

The Court enters the following orders:

(1)   The Clerk of Court is respectfully directed to terminate COORicheson, Acting Warden Martin, and Commissioner Quiros as Defendants in this case.

If Mr. Asiam believes in good faith that the deficiencies identified in this Order can be remedied, he may file a motion to amend with an attached proposed Amended Complaint. Any Amended Complaint will completely replace the prior Complaint in the action, and that no portion of any prior Complaint shall be incorporated into his Amended Complaint by reference. Any Amended Complaint must be filed by **September 19, 2025**.

(2) The Clerk of Court shall verify the current work address for APRN Lonis with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint and attachments to him at his confirmed addresses by **September 12, 2025**, and report on the status of the waiver request by **September 26, 2025**. If Defendant fails to return the waiver request, the Clerk of Court shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on Defendant, and Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk of Court shall send a courtesy copy of the Complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(4) Defendant shall file a response to the complaint, either an Answer or motion to dismiss, by **December 5, 2025**. If Defendant chooses to file an Answer, Defendant shall admit or deny the allegations and respond to the cognizable claims recited above. Defendant may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed by **April 10, 2026**. Discovery requests need not be filed with the court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed by **May 15, 2026**.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If Mr. Asiam changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. He must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If he has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendant or defense counsel of his new address.

**SO ORDERED** at New Haven, Connecticut, this 15th day of August, 2025.

/s/Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE